IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

GENE WILLARD GAYLOR,

    Petitioner,

v.                                    Civil Action No. 5:02-1206

THOMAS MCBRIDE, Warden,
Mount Olive Correctional Complex,

    Respondent.

MEMORANDUM OPINION

Pursuant to the court's order of March 7, 2006, in which the court overruled both petitioner's objections to Magistrate Judge R. Clarke VanDervort's Proposed Findings and Recommendation [hereinafter "Findings and Recommendation" or "F & R"], confirmed and accepted the F & R, and indicated that an explanatory memorandum opinion would follow forthwith, the court now issues its memorandum opinion.

On October 3, 2002, petitioner filed a petition under 28 U.S.C. § 2254 for a writ of habeas corpus.  On September 22, 2005, the court entered an order dismissing every ground of this petition excluding one related to a pretrial hearing transcript where the state judge had denied petitioner's request to use certain evidence.  (See Doc. No. 54.)  The court then referred this remaining issue back to United States Magistrate Judge R. Clarke VanDervort for proposed finding and recommendation as to disposition.  (Id.)

On February 14, 2006, the Magistrate Judge entered a second set of Proposed Findings and Recommendations as to the remaining ground of the petition.  In these proposed findings, the magistrate judge proposed that the district court grant respondent's motion to dismiss regarding the remaining claim. (See Doc. No. 57.)

On March 2, 2006, petitioner objected to the magistrate judge's proposed findings and recommendation.  (See Doc. No. 58.) For the reasons discussed below, the court overruled petitioner's objections in its previous order and ordered that this case be remanded to the magistrate for further proceedings.

### A. Factual Background

The general factual background of this case is adequately summarized in the court's earlier memorandum opinion.  (See Doc. No. 55 at 2-5.)  As such, the court will provide only the factual background relevant to petitioner's remaining claim.

In his petition, petitioner alleges that he was denied due process when the trial court in Greenbrier County, West Virginia, limited his counsel's cross-examination of the state's key witness against him in three instances: first, concerning Clayton Gaylor's habitual DUI offender status in the Commonwealth of Virginia; second, concerning Clayton Gaylor's use of a fraudulent driver's license; and third, concerning alleged compensation Clayton Gaylor received in exchange for his testimony in

petitioner and his co-defendants' criminal trials.  (See Doc. No. 1 at 77-94.)  Petitioner avers that after having been declared a habitual offender in a Virginia court, Clayton Gaylor was arrested on August 15, 1996, for driving a vehicle upon the highways of the Commonwealth and for driving under the influence of alcohol, both misdemeanor charges.  (See Doc. No. 4 at 98-101.)

Because of his history of DUI charges, petitioner maintains Clayton Gaylor neither possessed a valid driver's license, nor was able to obtain a license in any state.  (Id. at 87.) Further, when petitioner's underlying criminal trial commenced, Clayton Gaylor's August 15, 1996, charges had not yet been resolved.  (Id.; Doc. No. 4 at 98-105.)  Rather, petitioner avers that following the trials of petitioner and his co-defendants, an attorney from the Greenbrier County Prosecuting Attorney's Office requested that Clayton Gaylor's charges pending in Virginia be dismissed due to his cooperation and testimony in these earlier trials.  (See Doc. No. 1 at 87; Doc. No. 4 at 104-05.)

In support of this claim, petitioner attached a letter dated August 25, 2000, from Paul Detch, trial counsel for co-defendant Carroll Eugene Humphries, to Jim O'Connell, a prosecutor stationed in Chester, Virginia.  (See Doc. No. 4 at 104-05.)  The letter recounts details of a request by West Virginia prosecutors to have misdemeanor driving charges in Virginia against Clayton

-3-

Gaylor dismissed on account of his testifying in his brother's West Virginia trial. (See id.) Petitioner now avers that the dismissal of the Virginia state charges constituted compensation and established a motive for Clayton Gaylor to testify falsely at his petitioner's trial. Petitioner then avers that the trial court's refusal to let his counsel impeach Clayton Gaylor with these issues violated petitioner's constitutional rights.

In response, respondent contends that petitioner "fails to demonstrate that his efforts to impeach [Clayton] Gaylor were unconstitutionally circumscribed." (See Doc. No. 27 at 30.) Specifically, respondent avers that petitioner was allowed to impeach Clayton Gaylor through cross-examination focusing on Gaylor's history of chronic drug and alcohol abuse, his history of mental illness, his unemployment and malingering, his admitted perjury during petitioner's extortion trial, his own conviction for extortion, as well as Clayton Gaylor's own involvement in the bombing on Carroll Humphries's property." (Id. at 32.) To the extent that petitioner's cross-examination was limited, respondent contends that the limitations were permissible because any limitations were "well within the parameters of discretion. There is no right to present evidence which is irrelevant or, at best, only marginally relevant." (Id.)

Additionally, respondent avers that testimony about whether Clayton Gaylor had a valid driver's license was restricted because Clayton Gaylor needed to conceal this information out of fear of the petitioner, his brother.  (Id. at 31.)  Further, respondent notes that petitioner has not demonstrated from the record that Clayton Gaylor received any immunity for Virginia crimes from West Virginian authorities, that there is no evidence that Clayton Gaylor's license was 'fraudulently obtained' or that Clayton Gaylor's driving privileges were reinstated in exchange for his testimony. (Id. at 33.)

In response, petitioner restates all of his arguments, and indicates that the West Virginia prosecutor provided the following benefits to Clayton Gaylor in exchange for his testimony:

(1) Prevented his arrest on outstanding fugitive warrants;

(2) Knowingly permitted the witness to drive back and forth from Smithfield, North Carolina, to Lewisburg, W. Va., on a fraudulently obtained license;

(3) The state prosecutor and West Virginia State Police sergeant present at petitioner's trial assisted in obtaining an illegal driver's license for Clayton Gaylor; and

(4) The state prosecutor had all of the outstanding criminal charges against Clayton Gaylor dismissed.

(See generally Doc. No. 58 at 7-12.)

On direct review, the state habeas court found that Clayton Gaylor's testimony did not indicate that petitioner was denied the right to question or impeach Clayton Gaylor.  (See Doc. No. 15, Ex. 12.)  However, neither the Circuit Court of Greenbrier County nor the Supreme Court of Appeals of West Virginia provide a detailed explanation of their decisions.

### B.   Standard of Review

In order to demonstrate that he is entitled to federal habeas relief, petitioner must demonstrate that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Wainwright v. Goode, 464 U.S. 78, 83 (1983) ("It is axiomatic that the federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.").

Section 2254(d) provides that when the issues raised in a § 2254 petition were raised and considered on the merit in state court habeas proceedings, federal habeas relief is unavailable unless the state court's decision:

> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A federal court examining a habeas petition may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the state court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Williams v. Taylor, 529 U.S. 362, 412-413 (2000).  In making this determination, all factual determinations by the state court are entitled to a presumption of correctness.  28 U.S.C. § 2254(e).

When a state curt fails to address an issue, or fails to articulate a rationale behind its ruling, the federal courts "must independently review the record and the applicable law; however, the review is not a de novo review." Bell v. Jarvis, 236 F.3d 149, 163 (4th Cir. 2000), cert denied sub nom., 534 U.S. 830 (2001).  Rather, the federal court must conduct a review applying a deferential standard in which it must only determine whether the state court's decision is legally and factually reasonable.  Id.

### C.  Analysis

Because the state courts did not give reasons for their decision as to the propriety of the trial court's limitations on the cross-examination of Clayton Gaylor, the court now must review their decision as outlined in Bell v. Jarvis.  See id.

-7-

As the magistrate judge noted, the Sixth Amendment to the United States Constitution guarantees criminal defendants the right to be confronted with the witnesses against them.  <u>See</u> <u>Pointer v. Texas</u>, 380 U.S. 400 (1965).  However, the Sixth Amendment's Confrontation Clause guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  <u>See</u> <u>Delaware v. Fensterer</u>, 474 U.S. 15, 20 (1985).

In his proposed finding and recommendation, the magistrate judge summarizes a number of relevant Supreme Court cases which outline the procedures to be applied in determining whether a trial court violated a criminal defendant's rights through limiting his scope of cross-examination.  (<u>See</u> Doc. No. 57 at 9-10.)  In <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 680 (1986), the Supreme Court held that defendant states a violation of the Confrontation Clause of the Sixth Amendment where he can show that he was prohibited from engaging in otherwise appropriate cross-examination designed to show bias on the part of the witness, and thus "to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness."  <u>Id.</u>

Here, as the magistrate judge noted in his proposed finding and recommendation, the intent of petitioner's cross-examination of Clayton Gaylor was appropriate in that it was designed to

convey to the jury that Clayton Gaylor had a motivation to place the blame on petitioner in exchange for receiving a valid driver's license and regarding a possible arrangement regarding certain criminal charges outstanding against him. (See Doc. No. 57 at 10.)  However, the trial court found this cross-examination to be irrelevant because there was no evidence in the record indicating that Clayton Gaylor's driver's license was fraudulently obtained or that the state compensated Clayton Gaylor with restoration of driving privileges or through arranging that his Virginia State driving charges be dismissed in exchange for his testimony.

Additionally, at trial, the court permitted cross-examination on the issues of Clayton's drug, alcohol, and mental problems, but did not permit the defense to cross-examine him concerning his DUI habitual offender status in the Commonwealth of Virginia after determining at a pretrial hearing that the matter was irrelevant. (See Doc. No. 52 at 65.)  As respondent notes, although Clayton Gaylor was not being prosecuted for a still-active 1996 DUI charge, it was because he stayed outside of the Commonwealth of Virginia, and because Virginia would not have him extradited because the charges were misdemeanors. (See Doc. No.  As the magistrate judge notes, the Detch letter supports what Clayton Gaylor said at the preliminary hearing: because the habitual offender DUI charge was a misdemeanor, the Commonwealth

of Virginia would not bother him unless he returned to Virginia.
(See Doc. No. 57.)

Further, no constitutional violation appears to have
occurred when the trial court kept petitioner having information
about where Clayton Gaylor currently lived.  At the pretrial
conference, Clayton Gaylor indicated that he did not have a
driver's license in his own name.  (See Doc. No. 27, Ex. 16 at
869.)  When defendant pursued this line of inquiry, the trial
court judge stated that he did not see the relevance of the
question, petitioner's counsel stopped that line of questioning.
(Id.)

As to this question, even assuming that petitioner had some
plausible basis through which to impeach his brother's motives
through establishing that he currently possessed a fraudulent
driver's license, the tenuous link between petitioner's counsel's
line of questioning and the actual point of evidence that could
be used to impeach renders any possible error harmless.  Harmless
errors cannot provide the basis for a successful habeas petition.

Next, as the magistrate noted, with respect to petitioner's
allegations of some compensation Clayton Gaylor received
respecting his testimony, Clayton testified at the pretrial
hearing that no one had promised him "any immunity or favors or
anything else" in exchange for his testimony against petitioner.
(See Doc. No. 52 at 55.)  At trial, Clayton testified on cross-

examination that he submitted a false letter to a district court
judge in the hopes that he would receive a reduced sentence.
(See Doc. No. 27, Ex. 16, at 864-66.)  When questioned as to
whether he would lie to benefit himself, Clayton testified that
although he would have lied at one point to benefit himself, he
would no longer do so.  (Id. at 866.)  Defense counsel also
cross-examined Clayton Gaylor about whether he was testifying
regarding the murder scheme in order to remove himself from it.
(Id.)  He did not, however, cross-examine Clayton Gaylor as to
whether he received any form of compensation for his testimony.
(Id.)  Given that West Virginia adheres to the common law rule
that one cannot introduce extrinsic evidence of a witness's
credibility in a criminal trial, it appears that petitioner's
counsel exhausted almost every avenue of cross examination
available to him.

As the magistrate judge noted, the trial court did not
prevent petitioner from presenting any truly relevant evidence.
(See Doc. No. 57 at 12-13.)  Having reviewed the available
transcripts, relevant case law, and the substantial record in
this case, the court agrees with the magistrate judge that
petitioner's constitutional rights were not violated through the
trial court limiting the scope of his cross-examination.  (Id. at
13.)  As such, petitioner has failed to demonstrate a violation

-11-

of his constitutional rights as discussed in cases such as <u>Van Arsdall</u>.  <u>See</u> 475 U.S. at 680.

Additionally, petitioner has failed to present the court with any evidence that state prosecutors entered into an agreement with Clayton Gaylor to dismiss Virginia state charges against him in exchange for testimony in a West Virginia court. The "evidence" he has presented is entirely too speculative to provide a basis for this court to interject itself into the decision making of West Virginia state criminal courts.  Because all of the evidence in the record leads to the inescapable conclusion that the state court acted reasonably in limiting petitioner's right to cross-examine as it did, petitioner's only remaining claim in his habeas petition must be dismissed.  As such, petitioner's conviction must be affirmed.  <u>See</u> <u>Bell v. Jarvis</u>, 236 F.3d 149, 163 (4th Cir. 2000), <u>cert denied sub nom.</u>, 534 U.S. 830 (2001).

## D.  Conclusion

For the reasons discussed above, the magistrate judge's decision was well-reasoned and supported by case law. Petitioner's objections are accordingly overruled.  Further, because all of the claims in this case have been established invalid, by accompanying judgment order, this case will be dismissed from the active docket of the court.

The Clerk is directed to forward a copy of this Memorandum Opinion to the petitioner, pro se, and to all counsel of record.

IT IS SO ORDERED this 7th day of March, 2006.

ENTER:

David A. Faber
Chief Judge

-13-